Jaron Brignac
16450 Palomino PL, 204
Santa Clarita, CA 91387
Office Phone: (818) 738-9861
Fax: (818) 698-6492

Pro Per,



FILED
2019 FEB -7 PM 3:26

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| JARON BRIGNAC, an individual,<br><br>Plaintiff,<br>vs.<br><br>YELP, INC.; A California Corporation, 1-10, INCLUSIVE,<br><br>Defendants. | Case No.: 2:18-cv-10721 (ASx) R-ASx<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF:**<br><br>1. VIOLATION OF THE SHERMAN ACT 15 USC §2<br>2. VIOLATION OF 42 USC SECTION 1981-RACIAL DISCRIMINATION<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, JARON BRIGNAC hereby alleges the following based on his personal knowledge, information and belief:

Plaintiff JARON BRIGNAC hereby allege the following:

1. Plaintiff have resided in the County of Los Angeles, State of California at all relevant times herein.

1

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

2. YELP, INC., (hereinafter "YELP") was conducting business in the county of Los Angeles, State of California.

3. The true name or capacities, whether individual, corporate, associate, or otherwise, of the Defendants Does 1 through 10 are unknown to Plaintiff at this time, who therefore sues such Defendants by such fictitious names, and will amend this Complaint to allege their true names and capacities when said Defendants are ascertained. Plaintiff is informed and believe, and thereon allege, that each of said fictitiously named Defendants is responsible for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by said Defendants.

4. Plaintiff is informed and believe and thereon allege that all times herein mentioned each of the Defendants sued herein as DOE were the agents, servants, employees or employers of their Co-Defendant, and in doing the things hereinafter alleged, were acting in the course and scope of their authority as such agents, servants, employees, or employers and with the permission and consent of their Co-Defendant.

## FACTUAL ALLEGATIONS

5. Plaintiff is the sole business owner of BPCS LAW which was founded by Plaintiff and licensed on August 04, 2015.

6. Plaintiff's knowledge of Search Engine Optimization, (Hereinafter "SEO") and due diligence of employing SEO techniques, has established an online presence on GOOGLE and YELP for the past 2 or 3 years as a Corporation providing legal services for law firms, and attorneys. Specifically, "eviction attorneys"; "foreclosure defense attorneys"; and "family law attorneys"

7. For SEO purposes only, Plaintiff recently started boing business online as BPCS LAW EVICTIONS on GOOGLE and YELP.

2

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

8. YELP'S relevant product/service market is a national website and platform that displays user-generated content, such as reviews from consumers to write their opinions about businesses. YELP is a national advertising platform for local business owners and individuals. YELP operates as a search engine for online users who can access YELP'S website on their mobile phones, computers, or on any device that allows online access.

9. YELP'S physical geographic location is in San Francisco, California according to the California Secretary of State Website for registered corporations. YELP has a national presence for national consumers to both understand their local business and assist the local consumer in locating local businesses in the United States.

10. Defendant YELP acquired a powerful exclusive possession and control of the organic and paid SEO market and a powerful exclusive possession and control on GOOLGLE'S first page ranking which now dominates its' presence on GOOGLE'S website for almost every service or product a consumer is searching for on GOOGLE.

11. GOOGLE dominates more than 90% of the search engine market online to where the average person in society identifies search engine as GOOGLE, thus uses GOOGLE when searching online for a product, service, or information. GOOGLE search engine is a market for individuals and businesses to market their websites and business on its website for local consumers to locate it and engage it for products, service, or information advertised by a business.

12. Businesses that rank between 1 or 5 on the first page of GOOGLE as a result of a consumer searching for a product, service, or information generate more traffic to their business website or generate leads which statistically converts into sales or paying customers. The lower a business is ranking on GOOGLE, the lower a business conversion rate is on sales and customers. Thus, SEO has become a huge market amongst businesses competing to get their business ranked higher on GOOGLE.

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

13. There exist two forms of Search Engine Optimization. One form is called organic search engine optimization. The other is called paid advertising. The organic SEO can result in a business to place a ranking between 1-5 on the first page if it diligently meets the criteria of GOOGLES algorithm. One of the key elements to organic SEO is creatively inserting a high traffic keyword into a business website and into the business page listing on GOOGLE. Therefore, when a user is searching for a service or product with that key word than that business will likely self- populate as a search result on the first page. For example: A business can insert the key word "eviction attorney" in its website and once a user search GOOGLE for an "eviction attorney", all the local businesses that have websites with that key word in it will likely self-populate. The ads that appear with a green colored (sometimes yellow) rectangular icon next to it at the top of the page is paid ads that business paid GOOGLE for on a monthly basis, which is an expensive rate. This is known as Search Engine Optimization, which is composed of many hidden techniques to achieve good ranking. SEO is so unique, that billions of dollars are paid out to SEO companies to keep businesses ranking on the first page in their local communities.

14. Defendant YELP created a monopoly in the SEO market and a monopoly on GOOLGLE'S first page ranking. Indeed, whenever a consumer GOOGLES the keyword "eviction attorney" or "landlord tenant attorney" YELP appears not only on the first page of GOOGLE for that keyword, but also ranks three consecutive times on that same first page which pushes other competing businesses such as Plaintiff's business down in rank or to the second page for that keyword, which results in the online user to engage YELP for business. YELP acts as a referral for other businesses and redirects the user to its YELP Platform for the user to find its desired service or product from local business that advertises on YELP.

15. YELP maintains a different algorithm than GOOGLE for its first page ranking for business owners. This forces business owners to engage YELP for advertising and force

4

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

the business owner, such as Plaintiff, to follow YELP'S algorithm which is based on the user reviews on YELP to determine the business owner ranking, and requires those user reviews to only be reviews made by consumers who have a YELP account and use YELP regularly, which resulted in business owners such as Plaintiff for BPCS LAW/ dba BPCS LAW EVICTIONS to lose ranking on YELP, and as result, YELP offered to rank Plaintiff's business on the top of the first page in exchange for paying a monthly fee of $1,200 for paid ads. YELP'S monopoly on GOOGLE search, resulted in Plaintiff to lose out in an enormous amount of sales and business.

**Racial Discrimination**

16. Plaintiff is a Black American male individual and the only Black American owned business providing the services he provide in Beverly Hills California.

17. Defendants, from the date of their purported contract with Plaintiff, removed Plaintiff from their ads that target the location of Beverly Hills California, in light of the fact that Plaintiff has earned a first page and second place position on YELP's platform by following all the required criteria a business owner must follow in order to achieve such ranking, but YELP has arbitrarily removed Plaintiff from former higher ranking local ads he achieved and placed Plaintiff on lower level ranking pages, and in some instances Plaintiff is impossible to find.

18. However, other paying, personal and business ads, owned by non-Black American individuals have not lost their rankings, due to privileged contracts not made available to Plaintiff.

19. YELP is intentionally refusing to allow Plaintiff to enjoy the equal benefits of their privileged contracts, and refused to enforce their contract in the same manner they enforced their contracts with other individual white citizens.

5

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

## FIRST CAUSE OF ACTION: VIOLATION OF SHERMAN ACT 15 USC §2

20. Plaintiff hereby incorporates and herein by reference, all paragraphs contained in this complaint as if the same were fully set forth at length herein.

21. Pursuant to <u>Sumotext Corp. v. Zoove, Inc., Dist. Court, ND California 2018</u> to state a civil claim for monopolization under this provision, the plaintiff must allege facts showing: (1) the possession of monopoly power in the relevant market; (2) the willful acquisition or maintenance of that power; and (3) causal antitrust injury. <u>Somers v. Apple, Inc., 729 F.3d 953, 963 (9th Cir. 2013)</u>.

**a. Relevant Market**

22. "In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a relevant market." <u>Solyndra Residual Trust v. Suntech Power Holdings Co., 62 F. Supp. 3d 1027, 1044 (N.D. Cal. 2014)</u>. "A relevant market has two dimensions: the relevant geographic market and the relevant product market.". Defendants' YELP relevant product/service market is a national website and platform that displays user-generated content, such as reviews from consumers to write their opinions about businesses. Defendant YELP is also a national advertising platform for business owners and individuals operating as a search engine for online users who can access YELP website on their mobile phones or computers. Defendant YELP'S physical geographic location is in San Francisco, California according to the California Secretary of State Website for registered corporations. Defendant YELP, nevertheless, has a national presence for national consumers to both understand their local business, and assist the local consumer in locating local businesses in the United States.

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

**b. Monopolization**

23. To state a plausible monopolization claim under this provision requires plaintiff to show: "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP,* 592 F.3d 991, 998 (9th Cir.2010) (citation and quotes omitted); *accord Cost Mgmt. Servs., Inc. v. Wash. Natural Gas Co.,* 99 F.3d 937, 949 (9th Cir.1996).

24. Defendant YELP acquired a monopoly in organic and paid SEO on GOOGLE and acquired a monopoly on for first page ranking on GOOGLE'S website. GOOGLE dominates more than 90% of the search engine market online to where the average person in society identifies a search engine as GOOGLE when searching online for a product service, or information. GOOGLE search engine is a market for individuals and businesses to market their websites and business on its website for local consumers to locate it and engage it for products, service, or information advertised by a business.

25. Businesses that rank between 1 or 5 on the first page of GOOGLE as a result of a consumer searching for a product, service, or information generate more traffic to their business website or generate leads which statistically converts into sales or paying customers. The lower a business ranking on GOOGLE, the lower a business conversion rate is on sales and customers. Thus, SEO has become a huge market amongst businesses competing to get their business ranked higher on GOOGLE.

26. Defendant YELP created a monopoly in the SEO market. Indeed, whenever a consumer GOOGLES the keyword "eviction attorney" or "landlord tenant attorney" YELP appears not only on the first page of GOOGLE for that keyword, but also ranks three consecutive times on that same first page which pushes other competing businesses such as Plaintiff's business down in rank or to the second page, which results in the online user to engage YELP for business. YELP acts as a referral for other businesses redirects the user to its YELP Platform

7

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

for the user to find its desired service or product from local business that advertises on YELP. YELP maintains a different algorithm than GOOGLE for its first page ranking for business owners. This forces business owners to engage YELP for advertising and force the business owner, such as Plaintiff, follow YELP'S algorithm which is based on the user reviews on YELP to determine the business owner ranking, and requires those user reviews to soley be reviews made by consumers who have a yelp account and use yelp regularly, which resulted in business owner such as Plaintiff for BPCS LAW/ dba BPCS LAW EVICTIONS to lose ranking on YELP. And as result, YELP offers to rank Business owners such as Jaron Business on the top of the first page in exchange for paying a monthly fee, which are called paid ads. YELP'S monopoly on GOOGLE search, resulted in Plaintiff to lose out in enormous amount of sales.

**c. Essential Facilities Doctrine**

27. "An offer to deal with a competitor only on unreasonable terms and conditions can amount to a practical refusal to deal." *MetroNet*, 383 F.3d at 1132. Another court in this district has held that a 400% price increase was tantamount to a refusal to deal. *See Safeway Inc. v. Abbott Labs.*, No. C 07-05470 CW, 2010 WL 147988, at *7 (N.D. Cal. Jan. 12, 2010). YELP has offered and continues to offer place Plaintiff business in its first page ranking in exchange for Plaintiff paying an unreasonable amount of money on a monthly basis. Thus, YELP is refusing to deal with Plaintiff as a competitor business.

**d. Single Entity Monopolization**

28. Finally, YELP'S refusal to deal with Plaintiff in a reasonable manner as a business competitor constitutes liability for injury. A firm's unilateral refusal to deal with its rivals can give rise to antitrust liability. *See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S.

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

438, 448 (2009); <u>Aspen Skiing Co. v. Aspen Highlands Skiing Corp.</u>, 472 U.S. 585, 608-611, (1985).

### SECOND CAUSE OF ACTION: VIOLATION OF 42 USC SECTION 1981

Plaintiff hereby incorporates and herein by reference, all paragraphs contained in this complaint as if the same were fully set forth at length herein.

To establish a § 1981 claim, the plaintiff must show intentional or purposeful discrimination. <u>DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n</u>, 879 F.2d 459, 467 (9th Cir. 1989). Specifically, the plaintiff must allege (1) he is a racial minority; (2) defendant intended to discriminate based on race; and (3) the discrimination concerned an activity enumerated in the statute. See <u>Keum v. Virgin Am. Inc.</u>, 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011). <u>Lewis v. City of Fairfield</u> (E.D. Cal., Feb. 15, 2017, No. 2:16-CV-01053-JAM-AC) 2017 WL 633952, at *6

**Racial Minority**

In the instant case, Plaintiff is a racial minority, that is, Plaintiff is an Black American male individual. Plaintiff is the only Black American, and the only Black American owned business providing the services he provide in Beverly Hills California.

**Intent to Discriminate Based on Race**

Defendants intended to discriminate against Plaintiff based on his race by intentionally removing Plaintiff from their ads that target the location of Beverly Hills California, in light of the fact that Plaintiff has earned a first page and second place position on Yelp's platform by following all the required criteria a business owner must follow in order to achieve such ranking, but YELP has arbitrarily removed Plaintiff from former higher ranking local ads he achieved

9

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

and placed Plaintiff on lower level ranking pages, and in some instances Plaintiff is impossible to find.

However, other paying personal and business ads owned by non-African American individuals have not lost their rankings, obviously due to privileged contracts not made available to Plaintiff.

**Discriminatory Activity in Section 1981**

The discrimination concerned an activity enumerated in the statute, 42 USC Section 1981. Section 1981 reads in part: *"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."*

In the case at bar, YELP is intentionally refusing to allow Plaintiff to enjoy the equal benefits, and refused to enforce their contract in the same manner they enforced their contracts with other individual white citizens.

///
///
///
///
///
///
///
///
///

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them as follows:

1. For all compensatory damages incurred according to proof;
2. For all consequential damages incurred according to proof;
3. For all special damages according to proof;
4. For punitive damages sufficient to punish the Defendants and act as a deterrent to others;
5. For all statutory damages as applicable;
6. For any prejudgment or other interest according to law;
7. For costs and reasonable attorney's fees; and
8. For such other relief that the court may deem just and proper.

Dated: February 07, 2019                              JARON BRIGNAC

                                                      By: Jaron Brignac

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California: my business address is 16450 Palomino PL 204, Canyon Country, California 91387.

On the February 07, 2019 I served a copy of the foregoing documents entitled

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

On the interested parties in said case as follows:

BRIAN A. SUTHERLAND (SBN 248486)

BSUTHERLAND@REEDSMITH.COM

REED SMITH LLP

101 SECOND STREET, SUITE 1800

SAN FRANCISCO, CA 94105-3659

The above parties were served electronically via email upon verified stipulation within the emails. I hereby certify that I filed the foregoing with the United States District Court, Central District of California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction this service was made. This declaration is executed in Pasadena, California on February 07, 2019.

*Jaron Brignac*

**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**