UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARON LAMAR BRIGNAC,<br><br>    Plaintiff,<br><br>v.<br><br>YELP INC.,<br><br>    Defendant. | Case No. 19-cv-01188-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Docket Nos. 23, 50 |

Pro se Plaintiff Jaron Brignac ("Brignac") brings this suit against Defendant Yelp, Inc. ("Yelp") alleging that Yelp manipulates the rankings for businesses on its online platform and monopolizes online search results in violation of antitrust laws. Brignac also alleges that Yelp discriminated against him on the basis of his race by reducing the visibility of his business on Yelp's platform. Pending before the Court are Yelp's motion to dismiss Brignac's First Amended Complaint, Docket No. 23-1 ("MTD"), and Brignac's motion for a temporary restraining order, Docket No. 50 ("TRO Mot.").

For the reasons discussed below, the Court **GRANTS** Yelp's motion to dismiss and **DENIES** Brignac's TRO motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The operative First Amended Complaint (FAC) alleges the following. Brignac is the sole business owner of BPCS Law. Docket No. 17 ("FAC") ¶ 5. BPCS Law provides "legal services for law firms" and "eviction attorneys," "foreclosure defense attorneys," and "family law attorneys." *Id.* ¶ 6. He does not allege he is a lawyer. Brignac has "established on online presence" for his business on Google and Yelp by employing search engine optimization ("SEO") techniques. *Id.* ¶¶ 6–7. Google is a dominant online search engine. *Id.* ¶ 11. Businesses that rank

1  on the first page of a Google search result generate more traffic to their websites and therefore
2  more sales than lower-ranking businesses.  *Id.* ¶ 12.  SEO techniques allow businesses to improve
3  their Google search rankings.  *Id.*

4  Yelp is "a national website and platform that displays user-generated content, such as
5  reviews from consumers to write their opinions about businesses."  *Id.* ¶ 8.  According to Brignac,
6  Yelp "acquired a powerful exclusive possession and control" of the SEO market on Google that
7  amounts to a monopoly.  *Id.* ¶¶ 10, 14.  For example, when a consumer searches for the keyword
8  "eviction attorney" on Google, the first three search results are Yelp pages.  *Id.* ¶ 14.  Yelp thus
9  crowds out the websites of business owners like Brignac, making their businesses less visible on
10 Google.  *Id.* ¶¶ 12–14.  Yelp therefore "forces business owners to engage YELP for advertising" in
11 order to have an effective presence on Google.  However, Yelp maintains "a different algorithm"
12 for ranking businesses on its own platform than Google.  *Id.* ¶ 15.  That algorithm is "based on the
13 user reviews on YELP" and has caused Brignac's business to fall down Yelp's rankings, resulting
14 in lost sales.  *Id.*

15 Brignac is "a Black American male individual and the only Black American owned
16 business providing the services he provide[s] in Beverly Hills California."  *Id.* ¶ 16.  He previously
17 was ranked highly in local Yelp ads but Yelp "removed Plaintiff from their ads that target the
18 location of Beverly Hills."  *Id.* ¶ 17.  In contrast, other ads "owned by non-Black American
19 individuals have not lost their rankings, due to privileged contracts not made available to
20 Plaintiff."  *Id.* ¶ 18.  Brignac alleges that Yelp is "intentionally refusing to allow Plaintiff to enjoy
21 the equal benefits of their privileged contracts."  *Id.* ¶ 19.

22 Brignac initially filed suit against Yelp in the Superior Court for the County of Los
23 Angeles.  Docket No. 1.  Yelp removed the case to the federal district court for the Central District
24 of California.  *Id.*  The Central District then granted Yelp's motion to transfer the case to this
25 district.  Docket No. 26.  Brignac filed his FAC in February 2019, asserting two causes of action:
26 (1) violation of the Sherman Act, 15 U.S.C. § 2, FAC ¶¶ 20–28, and (2) racial discrimination in
27 violation of 42 U.S.C. § 1981, FAC at 9–10.  Yelp filed the instant motion to dismiss thereafter.
28 On May 3, 2019, Brignac moved for a TRO against Yelp.  *See* TRO Mot.  In the TRO

motion, Brignac alleges that since he filed this suit, Yelp has retaliated against him and "other business owners he associate[s] with" by creating "fake accounts" through "Yelp agents" to leave negative "fake reviews" of Brignac's business and his associates' businesses on the Yelp platform. *Id.* at 2, 10.  By doing so, Yelp "flush[ed] [their] business ranking to the lowest ranking number," discouraging prospective customers from using their services.  As evidence for these claims, Brignac submitted a log from Google Analytics of "data such as the user location" and "network domain" of users who have visited his business website.  Docket No. 55 ¶ 4.  The data show that between November 2018 and May 2019, users from the city of San Francisco, from the "yelpcorp.com" network domain, logged a total of 37 visits to Brignac's website.  *Id.*, Exh. 2. Brignac represents that his business is based in Southern California, and that he "do[es] not have any business relations with anyone in San Francisco."  TRO Mot. at 10.

Brignac also alleges that Yelp "extracted misleading publications about [him]" from his "social media post from 2016" to anonymously file a "false complaint" against him with the California State Bar.  *Id.* at 10–11; *see* Docket No. 57, Exh. 1 (email from California State Bar informing Brignac of the complaint).  As a result, he is being subjected to an investigation for the unauthorized practice of law, even though he "is in fact a Paralegal who contracts with attorneys, and [is] not holding [him]self out as an Attorney."  TRO Mot. at 11.  In support of this allegation, Brignac avers in his declaration that "Yelp is stationed in San Francisco and a user from San Francisco has sifted through [his] website" and "used verbiage from the same website" in the State Bar complaint against him.  Docket No. 55 ¶ 4.

Brignac contends that Yelp's conduct constitutes retaliation against witnesses and bribery in violation of the Racketeering Influenced Corrupt Organization Act (RICO), 18 U.S.C. § 1964. TRO Mot. at 2–3.  He asks the Court to grant the TRO to prevent Yelp from engaging in further RICO violations.  *Id.* at 9.

## II.    MOTION TO DISMISS

A.   Legal Standard

For a plaintiff to survive a Rule 12(b)(6) motion to dismiss after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), his factual allegations

"must . . . suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-35 (9th Cir. 2014). In other words, the complaint "must allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility 'of entitlement to relief.'" *Id.*

The Ninth Circuit has outlined a two-step process for evaluating pleadings against this standard. "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Levitt*, 765 F.3d at 1135 (citations omitted).

If a complaint is dismissed under Rule 12(b)(6), leave to amend should generally be freely granted per Rule 15(a) unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Bly-Magee v.* California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)). For instance, leave to amend may be denied where "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

B.  Sherman Act Claim for Monopolization

Brignac's first cause of action alleges Yelp engaged in monopolization in violation of § 2 of the Sherman Act. Section 2 outlaws anticompetitive conduct that monopolizes or threatens actual monopolization. 15 U.S.C. § 2. Before proceeding to the substance of Brignac's § 2 claim, the Court must address Yelp's argument that Brignac is not the proper party to bring the claim.

4

1. Real Party in Interest

Federal Rule of Civil Procedure 17 requires that an action "be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a); *see U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986). Yelp argues that Brignac is not the real party in interest in this suit because it is his business, BPCS Law, that sustained the alleged antitrust injury in this case. Mot. at 5–6. Yelp observes that Brignac describes his business as "a *Corporation* providing legal services." FAC ¶ 6 (emphasis added). This point is important because "[a] shareholder of a corporation injured by antitrust violations has no standing to sue in his or her own name . . . . even if the injured shareholder is the sole shareholder." *Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1375 (9th Cir. 1996) (citations omitted); *see id.* (explaining that "[i]f shareholders were permitted to recover their losses directly, there would be the possibility of a double recovery, once by the shareholder and again by the corporation"). Indeed, under 28 U.S.C. § 1654, "[a] corporation may appear in federal court only through licensed counsel." *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) (citing *Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993)). Thus, if it is true that BPCS Law is a corporation, Brignac would not have standing to bring his Sherman Act claim.

In his opposition brief, however, Brignac asserts that BPCS Law is a sole proprietorship, not a corporation. Docket No. 40 ("Opp.") at 2. He attaches a "Fictitious Business Name Statement," filed with the County Clerk of Los Angeles approximately a week before he filed the FAC, on which he lists BPCS Law as a business conducted by "an Individual" rather than "a Corporation." *Id.*, Exh. A. There are also indications in the FAC that when Brignac referred to his business as a "Corporation," he did not necessarily mean it as a term of art. For instance, he explains that "[f]or SEO purposes only, Plaintiff recently started boing business online as BPCS LAW EVICTIONS on GOOGLE and YELP." FAC ¶ 7. The FAC does not say that BPCS Law was ever formally incorporated. In view of the Fictitious Business Name Statement and the ambiguity in the FAC, and given that Brignac is a pro se litigant who may not have been aware of the technical differences between a corporation and a sole proprietorship, the Court will at this juncture accept Brignac's representation that BPCS Law is a sole proprietorship. This allows

1  Brignac to bring an antitrust claim on behalf of BPCS Law because a sole proprietor may sue pro
2  se on behalf of the sole proprietorship. *Sharemaster v. U.S. Sec. & Exch. Comm'n*, 847 F.3d 1059,
3  1066 n.4 (9th Cir. 2017) (explaining that "[a] sole proprietorship has no legal existence apart from
4  its owner") (citations omitted).  However, if Brignac intends to amend his complaint in accordance
5  with this Order, he should clarify the status of his business.

        2.      <u>The Relevant Market</u>

Next, Yelp argues that Brignac has failed to plead the substantive elements of a Sherman Act monopolization claim.  "There are three essential elements to a successful claim of Section 2 monopolization: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal 'antitrust' injury." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481 (1992).

To establish the first element, "the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008).  "The relevant market must include both a geographic market and a product market." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (citation omitted).  The latter "must encompass the product at issue as well as all economic substitutes for the product." *Newcal Indus.*, 513 F.3d at 1045.  Economic substitutes are products that have a "reasonable interchangeability of use" or sufficient "cross-elasticity of demand." *Id.* (quoting *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962)).

It is not clear from the FAC what Brignac is alleging as the relevant market here.  On the one hand, he states that Yelp's "relevant product/service market is a national website and platform that displays user-generated content, such as reviews from consumers to write their opinions about businesses."  FAC ¶ 22.  On the other hand, he also alleges that "GOOGLE dominates more than 90% of the search engine market," and that Yelp in turn monopolizes Google's search results. *Id.* ¶¶ 24–26.  At the hearing, Brignac confirmed that the "relevant market" on which he is hinging his Sherman Act claim is *Google's* search platform for eviction legal services, not Yelp's review platform.  However, even assuming that a search platform can be a cognizable "market" within the

meaning of the Sherman Act, Brignac's claim fails because the FAC says nothing about economic substitutes for Google's product, *i.e.*, other online search engines on which users can look for eviction legal services. Without this information, Brignac's § 2 claim must be dismissed because its "'relevant market' definition is facially unsustainable." *Newcal Indus.*, 513 F.3d at 1045; *see Tanaka v. Univ. of S. California*, 252 F.3d 1059, 1063 (9th Cir. 2001) ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim.").

### 3. Anticompetitive Conduct

To establish the second element of a § 2 claim, the plaintiff must allege that the defendant engaged in anticompetitive conduct by leveraging its monopoly power "to foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Eastman Kodak*, 504 U.S. at 482–83 (citation omitted).

The FAC alleges that Yelp is engaging in anticompetitive conduct in Google's search market by "acquir[ing] [a] monopoly . . . for first page ranking on [Google's] website," such that "whenever a consumer [Googles] the keyword 'eviction attorney' or 'landlord tenant attorney' YELP appears not only on the first page of [Google] for that keyword, but also ranks three consecutive times on that same first page which pushes other competing businesses such as Plaintiff's business down in rank or to the second page." FAC ¶¶ 24, 26. But, as the Supreme Court has emphasized, the mere "possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct.*" *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (emphasis in original). And "growth or development as a consequence of a superior product, business acumen, or historic accident" does not constitute anticompetitive conduct. *Id.* (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)).

Brignac nowhere alleges that Yelp's prominence on Google search results is the result of anything other than Yelp's superior product or business acumen. Indeed, he recognizes that it is not Yelp that controls Google search rankings, but Google itself: a business can attain a high ranking on Google "if it diligently meets the criteria of *GOOGLE[']s* algorithm." FAC ¶ 13 (emphasis added). And Yelp achieved its dominance on Google's platform by means of SEO

techniques, of which "[o]ne of the key elements . . . is creatively inserting a high traffic keyword into a business website." FAC ¶¶ 13–14.  Although Plaintiff asserts Yelp uses its dominance on Google's platform to disadvantage businesses who are ranked by Yelp, that ranking (whether fair or not) is not "anticompetitive conduct" under § 2 of the Sherman Act.  It does not affect the ability of Yelp's competitors to compete against Yelp.  Plaintiff has not alleged unlawful anticompetitive conduct.

### 4. Antitrust Injury

Nor has Brignac established he suffered an antitrust injury.  Antitrust injury is made up of four elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003).  As an initial matter, Brignac has not alleged antitrust injury because he is not a competitor of Yelp.  *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (cautioning that "[i]n deciding whether the plaintiff was injured by an anticompetitive aspect or effect of the defendant's behavior, care must be taken in defining 'competition,'" because "[c]ompetition consists of rivalry among competitors").  Brignac is a provider of legal services, whereas Yelp is in the business of online review aggregation and paid advertising.  *See* FAC ¶¶ 6, 8.  Even if Brignac believes that he and Yelp are, in some sense, competing for advertising visibility on the Google platform, he cannot show that Yelp's actions cause him antitrust injury because Google's algorithm determines search rankings and Yelp's alleged use of SEO techniques to secure favorable search rankings is not "unlawful conduct."  *Glen Holly*, 352 F.3d at 372.

In sum, Brignac has failed to establish a § 2 claim.  Nor can he do so through amendment without contradicting his current allegations that Yelp is boosting its visibility on Google by using SEO techniques to meet the criteria of Google's ranking algorithm.  Accordingly, Brignac's Sherman Act claim is **DISMISSED with prejudice**.

### C. Section 1981 Claim for Racial Discrimination

Brignac's second cause of action alleges that Yelp discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981.  "Section 1981 offers relief when racial discrimination

8

1  blocks the creation of a contractual relationship, as well as when racial discrimination impairs an
2  existing contractual relationship. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006);
3  *Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617, 622 (9th Cir.
4  2019).
5      Yelp argues that Brignac lacks statutory standing to bring a § 1981 claim because the
6  contract that is being allegedly impaired is between BPCS Law and Yelp, not Brignac and Yelp.
7  *See* Mot. at 15.  Assuming that BPCS Law is a corporation, Yelp would be correct. *See Domino's*
8  *Pizza*, 546 U.S. at 477–80 (holding that the sole shareholder of a corporation lacked standing to
9  state a personal § 1981 claim where the defendant allegedly breached its contract with the
10 corporation, because "the shareholder and contracting officer of a corporation has no rights and is
11 exposed to no liability under the corporation's contracts").  However, as discussed above,
12 Brignac's opposition brief clarifies BPCS Law is a sole proprietorship, not a corporation.  Brignac
13 therefore has standing to bring a § 1981 claim.
14     To state a claim under § 1981, a plaintiff must establish three elements: "(1) the plaintiff is
15 a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant;
16 and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Keum*
17 *v. Virgin America Inc.*, 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011).  Here, Brignac has failed to
18 establish the second element, because he has not "allege[d] facts that would support an inference
19 that [the] defendant[] intentionally and purposefully discriminated against [him]." *Imagineering,*
20 *Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1313 (9th Cir. 1992), *abrogated on other grounds by*
21 *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1055 (9th Cir. 2008).  The FAC alleges that
22 Yelp "arbitrarily removed Plaintiff from former high ranking local ads . . . and placed Plaintiff on
23 lower level ranking pages," while not doing the same to ads "owned by non-Black American
24 individuals." FAC ¶¶ 17–18.  But Brignac provides no factual support for his conclusory assertion
25 that Yelp engaged in this behavior "intentionally" because of his race. *Id.* ¶ 19; *see Gray v. Apple*
26 *Inc.*, No. 16-CV-04421-HSG, 2017 WL 1709327, at *3 (N.D. Cal. May 3, 2017) (dismissing
27 § 1981 claim where "Plaintiff does not allege sufficient detail about [the contractual] transactions
28 to plausibly support an inference that Plaintiff's race triggered Defendant's treatment of him").  In

9

fact, any inference that Yelp depressed Brignac's business ranking due to racial animus is undermined by his allegations elsewhere in the FAC.  For example, he notes that Yelp's algorithm for ranking businesses "is based on the user reviews on YELP." FAC ¶ 15.  He also alleges that the "non-Black American individuals" whose business rankings were not affected had "paying, personal and business ads," *id.* ¶ 18, whereas he turned down Yelp's "offer[] to rank Plaintiff's business on top of the first page in exchange for paying a monthly fee of $1,200," *id.* ¶ 15.  These allegations suggest that the change in Brignac's ad ranking is not attributable to his race, but rather the user reviews for his business and his decision not to pay for advertising on Yelp.

At the hearing, however, Brignac clarified that the basis for his § 1981 claim is Yelp's practice of offering advertising at different rates depending on a business owner's race.  According to Brignac, whereas Black business owners have to pay a steep monthly fee—in Brignac's case, $1,200—in order to obtain favorable rankings on Yelp, non-Black business owners are offered lower rates for the same privileges.  If this claim of differential treatment is true, it may support a valid § 1981 claim.

Accordingly, the Court **DISMISSES** Brignac's § 1981 claim **with leave to amend**.  However, Brignac is advised to amend his complaint only if he can, in good faith, allege specific facts that would support his assertion of differential treatment.  Per Rule 11(b) of the Federal Rules of Civil Procedure, when an "unrepresented party" presents "to the court a pleading, written motion, or other paper," he is certifying that "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," his "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Failure to comply with Rule 11(b) could subject a litigant to sanctions.

### III. MOTION FOR TEMPORARY RESTRAINING ORDER

A. Legal Standard

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1076 (N.D. Cal. 2016) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7

1  (9th Cir. 2001)). Thus, to obtain a TRO, the moving party bears the burden of showing: (1) a
2  likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the
3  absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and
4  (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council Inc.*, 555 U.S.
5  7, 20 (2008). Under the "sliding scale" variant of the same standard, "if [the movant] can only
6  show that there are 'serious questions going to the merits'—a lesser showing than likelihood of
7  success on the merits—then a preliminary injunction may still issue if the 'balance of hardships
8  tips *sharply* in the [movant]'s favor,' and the other two *Winter* factors are satisfied." *All. for the*
9  *Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (emphasis in original) (quoting *Shell*
10 *Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

B.  Analysis

As an initial matter, the Court has no authority to grant the TRO Brignac requests, because the RICO claim that forms the basis for his request is not pled in the FAC. "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 633 (9th Cir. 2015). More specifically, a court cannot grant injunctive relief unless the movant demonstrates "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* at 636 (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). That relationship is absent here. Brignac's FAC asserts only antitrust and racial discrimination claims based on Yelp's monopolization of Google search results. *See* Docket No. 17 ¶¶ 14–19. The only relief sought in the FAC is damages. *See id.* at 11. In contrast, the TRO Motion asserts retaliation and bribery claims under RICO based on Yelp's alleged creation of fake reviews against Brignac's business in order to lower his Yelp rating. The TRO Motion asks for injunctive relief. Thus, there is not a sufficient relationship between the claims raised in Brignac's TRO Motion and those in the FAC to give the Court authority to issue a TRO here. *See Merritt v. Dimond*, No. 17-CV-

06101-LHK, 2018 WL 3126391, at *8 (N.D. Cal. June 26, 2018).

Even if the Court were to consider the substance of the TRO Motion, Brignac has shown no likelihood of succeeding on the merits of his claims nor any irreparable harm that would result absent a TRO. The TRO Motion is premised on Brignac's RICO claim. Although "RICO provides a private cause of action," *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)), the Ninth Circuit has squarely held that "injunctive relief is not available to a private party in a civil RICO action," *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986) (reversing a grant of a preliminary injunction based on a RICO claim by the district court). Thus, as a matter of law, a private plaintiff's "RICO claim . . . cannot be the basis for a temporary restraining order or preliminary injunction." *Hamana v. Kholi*, No. 10CV1630 BTM BGS, 2010 WL 3292953, at *2 (S.D. Cal. Aug. 19, 2010). Therefore, Brignac's TRO Motion cannot succeed on the merits.[1]

Brignac has also failed to establish irreparable injury caused by Yelp. He claims his business is being harmed by the fake negative reviews that Yelp agents are posting about his business, without evidence to substantiate that claim. The Google Analytics log he submitted only shows that users from the "yelpcorp.com" network domain have repeatedly viewed his website since November 2018. But merely visiting Brignac's website has not caused him any harm; it is the leaving of negative reviews that impacts his business, but Brignac has not produced any evidence to indicate that Yelp is responsible for those reviews. Nor has he adduced any evidence that Yelp was behind the anonymous State Bar complaint against him. He references "verbiage from [his] website" being used in the State Bar complaint. But Brignac's website is publicly viewable, and anyone could have quoted language from it. A similarity in verbiage between the website and the State Bar complaint hardly supports a plausible inference that *Yelp* authored the complaint.

---

[1] Brignac suggests in his motion that a TRO is necessary to allow him to pursue his antitrust and racial discrimination claims. *See* TRO Mot. at 4. However, as explained in the motion to dismiss memo, those claims have not been adequately pled and accordingly cannot sustain a TRO.

## IV. CONCLUSION

For the foregoing reasons, Yelp's motion to dismiss is **GRANTED**. Brignac may amend his § 1981 claim, consistent with Rule 11(b), within 30 days of the date of this Order.[2] Brignac's TRO motion is **DENIED**.

This order disposes of Docket Nos. 23, 50, and 57.

**IT IS SO ORDERED**.

Dated: June 5, 2019

_____
EDWARD M. CHEN
United States District Judge

---

[2] Shortly before the May 9, 2019 hearing, Brignac filed a motion for leave to file a Second Amended Complaint. Docket No. 57. At the hearing, Brignac asked the Court to disregard this motion and stated that he would amend his complaint in accordance with this Order.

13