UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARON LAMAR BRIGNAC, <br>     Plaintiff, <br> v. <br> YELP INC., <br>     Defendant. | Case No. 19-cv-01188-EMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** <br><br> Docket No. 64 |

## I.     INTRODUCTION

Pro se Plaintiff Jaron Brignac brings this suit against Defendant Yelp, Inc. ("Yelp") alleging that Yelp discriminated against him on the basis of race in violation of 42 U.S.C. § 1981. Pending before the Court is Yelp's Motion to Dismiss Mr. Brignac's Second Amended Complaint ("Mot."), Docket No. 64, which the Court previously determined it would hear—in part—as a motion under Federal Rule of Civil Procedure 56. Principally, the question currently before the Court is whether Mr. Brignac brings this suit on behalf of a corporation or whether he brings it on behalf of a sole proprietorship. If the former, the corporation must comply with Local Civil Rule 3-9(b), which requires that a corporation appearing before the Court be represented by counsel. The Motion to Dismiss on the merits was stayed, pending resolution of this issue.

## II.     BACKGROUND

A.     <u>Factual Background</u>

As alleged in his Second Amended Complaint, Mr. Brignac is the "sole proprietor of BPCS Law Evictions," which is a sole proprietorship. Second Amended Complaint ("SAC") ¶ 5, Docket No. 63. In addition, Mr. Brignac "is a Black American male and BPCS LAW

EVICTIONS is a Black American owned business." *Id.* ¶ 6.

Mr. Brignac alleges that Yelp "offers contracts to business owners to advertise on Yelp's platform" and that these contracts "specifically determine[] the ranking position for business owners." *Id.* ¶ 7. Mr. Brignac further alleges that there are two types of contracts. *Id.* ¶ 7–8. One type of contract is free and requires the "click of a hyperlink button," which links to a page where a business owner can "confirm their business information." *Id.* ¶ 8(a). Using that type of contract, Mr. Brignac alleges that a user "must follow Yelp's algorithm in order [to] obtain a user ranking that can rank the business owner in a number one or two position on the first page." *Id.* The other type of contract is a "paid advertising contract." *Id.* ¶ 8(b). This is "a separate contract" from the first service, which Yelp offers to business owners for free. *Id.* ¶ 12.

Mr. Brignac alleges that he first "took advantage of the free contract" and was advised by a Yelp representative about how to "help his ranking and user views." *Id.* ¶ 9. Plaintiff attempted to follow this advice for months, but "did not notice any change in his ranking or user views." *Id.* ¶ 10. However, during that same time period, he "noticed other non-black business owners, who were offering the same service as Plaintiff ranking above Plaintiff." *Id.* Because Mr. Brignac "wasn't seeing any progress in free advertising," he "explored the paid contract" option and "on or about October of 2017, Plaintiff and Yelp executed a paid advertising contract." *Id.* ¶ 10–11.

After executing the paid contract, "Plaintiff did not notice his ads ranking above his competitors, rather Plaintiff continued to see other non-black business owners offering the same service ads as him ranking above him." *Id.* ¶ 13. As a result, Mr. Brignac believes that "Yelp intentionally did not uphold their promise in his paid advertising contract, but did uphold their contract promises to other nonblack business owners" and that this "explains why the nonblack business owners of legal services ads were and are continuously ranking above Plaintiff's ads." *Id.* ¶ 18. In addition, Mr. Brignac believes that "all non-paid ads of Plaintiff are intentionally placed in lower rankings below nonblack business owners despite Plaintiff's efforts in following all of Yelp's advice for optimizing his page on their platform" and that "Yelp offered different advertising performance contracts to other nonblack business owners similarly situated in the same locality as Plaintiff, which is why Plaintiff is ranking lower than other nonblack business

2

owners providing the same services." *Id.* ¶ 19, 20.

He asserts a claim for discrimination in the making and enforcement of contracts under 42 U.S.C. § 1981. Mot. at 6–7.

B. <u>Procedural Background</u>

On November 19, 2018, Mr. Brignac filed a lawsuit (naming himself, as an individual, as the plaintiff) against Yelp. *See* Complaint for Damages and Equitable Relief ("Original Complaint"), Docket No. 1. That complaint identified Mr. Brignac as the "sole business owner of BPCS LAW which was founded by Plaintiff and licensed on August 04, 2015." *Id.* ¶ 5. It also highlighted his successful online presence as "a Corporation providing legal services for law firms, and attorneys," *id.* ¶ 6, and noted that BPCS Law sometimes did business at BPCS Law Evictions, *id.* ¶¶ 15, 21. That complaint alleged violations of the Sherman Act based on Mr. Brignac's allegation that Yelp had "created a monopoly in the [Search Engine Optimization] market and a monopoly on GOOLGLE'S first page ranking." *Id.* ¶ 14. After the case was removed to federal court by defendants, *see* Notice of Removal, Docket No. 1, Mr. Brignac filed an amended complaint (also naming himself, as an individual, as the plaintiff), *see* First Amended Complaint ("FAC"), Docket No. 17. That amended complaint also described Mr. Brignac as "the sole business owner of BPCS LAW" and noted his online presence "as a Corporation providing legal services for law firms, and attorneys." *Id.* ¶¶ 5–6. The case was then transferred to the Northern District of California. *See* Order Granting Defendant's Motion to Transfer Venue, Docket No. 26.

On June 5, 2019, the Court granted Yelp's Motion to Dismiss Mr. Brignac's First Amended Complaint, dismissing his Sherman Act claim with prejudice and his § 1981 claim with leave to amend. Order Granting Defendant's Motion to Dismiss ("Dismissal Order") at 8, 10, Docket No. 62. As to the § 1981 claim, the Court noted, "Yelp argues that Brignac lacks statutory standing to bring a § 1981 claim because the contract that is being allegedly impaired is between BPCS Law and Yelp, not Brignac and Yelp. Assuming that BPCS Law is a corporation, Yelp would be correct." Dismissal Order at 9 (internal citations omitted). However, the Court also observed that "Brignac's opposition brief clarifies BPCS Law is a sole proprietorship, not a

3

corporation" which would mean that "Brignac . . . [would have] standing to bring a § 1981 claim." *Id.* The Court encouraged Mr. Brignac to "clarify the status of his business," should he decide to amend his complaint. *Id.* at 6.

On July 1, 2019, Mr. Brignac filed a Second Amended Complaint. *See* SAC. That Complaint names "JARON BRIGNAC, an individual and sole proprietor of BPCS LAW EVICTIONS" as the plaintiff. *Id.* at 1. In the complaint, Mr. Brignac states, "Plaintiff, JARON BRIGNAC, is the sole proprietor of BPCS LAW EVICTIONS, and BPCS LAW EVICTIONS is a sole proprietorship." SAC ¶ 5. The Second Amended Complaint does not mention the entity "BPCS Law"; it only mentions "BPCS Law Evictions." *Id.* The only cause of action contained in the Second Amended Complaint is a violation of 42 U.S.C. § 1981, alleging intentional or purposeful racial discrimination against Mr. Brignac, who is a "black American male individual." *Id.* ¶ 24–33. More specifically, Mr. Brignac contends (1) that "Yelp intentionally did not uphold their promise in his paid advertising contract, but did uphold their contract promises to other nonblack business owners," (2) that "all non-paid ads of Plaintiff are intentionally placed in lower rankings below nonblack business owners," and (3) that "Yelp offered different advertising performance contracts to other nonblack business owners similarly situated in the same locality as Plaintiff." *Id.* ¶¶ 27–31.

On July 15, 2019, Yelp filed a Motion to Dismiss Mr. Brignac's Second Amended Complaint. *See* Motion to Dismiss Second Amended Complaint ("Mot."), Docket No. 64. The motion alleges that the "advertising agreement between BPCS Law and Yelp . . . shows that 'BPCS Law,' a corporation, was the contracting 'Client' under the parties' advertising agreement. Therefore, Brignac has no standing to assert a claim for racial discrimination in contracting or enforcement of contracts under 42 U.S.C. § 1981." Mot. at 1. To support that contention, Yelp has provided four records from the California Secretary of State, offering them as proof that Mr. Brignac's business—identified by Yelp as BPCS Law—was a corporation. Mot. at 10; *see also* Request for Judicial Notice ("RJN"), Exs. A–D, Docket No. 65. Yelp also submitted a declaration from Yelp's Director of User Operations indicating that it was BPCS Law—and not BPCS Law Evictions—that entered into an advertising agreement with Yelp. Declaration of Ian MacBean

4

("MacBean Decl.") at 1; Docket No. 64-1; *see also* Mot. at 9.

On July 23, 2019, Mr. Brignac filed a Motion to Treat Defendant's Motion to Dismiss as a Motion for Summary Judgment ("Mot. for SJ") at 2, Docket No. 66. In that Motion, Mr. Brignac noted, "Plaintiff respectfully request [sic] the court to convert or treat Defendant's motion to dismiss as a motion for summary judgment due to their motion to dismiss relying upon matters presented outside of the pleading that were always in dispute." Mot. for SJ at 2. Rule 12(d) of the Federal Rules of Civil Procedure requires that when, "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Pro. 12(d). Because Yelp provided public records, a declaration, and an email exchange between Yelp and Mr. Brignac together with their Motion to Dismiss, the Court granted Plaintiff's Motion in part. *See* Order Granting in Part Plaintiff's Motion to Treat Defendant's Motion to Dismiss as a Motion for Summary Judgment ("SJ Order") at 1, Docket No. 70. The Court explained that it would specifically hear "as a motion under Federal Rule of Civil Procedure 56, the question whether Mr. Brignac complies with Local Civil Rule 3-9(b) – whether the plaintiff brings this suit on behalf of a corporation or only as a sole proprietorship." SJ Order at 1. It further explained that "the nature of Mr. Brignac's business in this suit is a threshold matter for the Court to resolve." *Id.* at 3.

The Court's Order also permitted Mr. Brignac an extra week to file his Opposition to Defendant's Motion to Dismiss and permitted Yelp a week after the submission of Mr. Brignac's Opposition to file their Reply. *Id.* at 3. The hearing on the Rule 56 Motion was rescheduled for September 24, 2019, nearly one month after the original hearing date for the Motion to Dismiss. *Id.* at 3–4. The Court believes this afforded both parties adequate notice of the Motion for Summary Judgment and a sufficient opportunity to be heard, as Federal Rule of Civil Procedure 56 Requires. *See* Fed. R. Civ. Pro 56.

### III. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and

5

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.[1]

Although Defendant Yelp did not move the Court for summary judgment, the Court, at Mr. Brignac's invitation and upon notice to the parties, has elected to treat its Motion to Dismiss as one for summary judgment. Thus, the rules and principles that apply to a defendant's motion for summary judgment govern this stage of the proceedings. Where a defendant moves for summary judgment based on a claim for which the plaintiff bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (stating that, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor" (emphasis omitted)).

As the Court noted in a previous order, "only the issue of whether Mr. Brignac is acting on behalf of a corporation or a sole proprietorship shall be converted to a Rule 56 motion for partial summary adjudication." SJ Order at 3. *See* 28 U.S.C. § 1654. The Court further explained: "Civil Local Rule 3-9(b) states: 'A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court.' As Mr. Brignac is not

---

[1] Evidence may be presented in a form that is not admissible at trial so long as it could ultimately be capable of being put in admissible form. *See* Fed. R. Civ. P. 56(c)(2) (providing that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); *see also, e.g.*, *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (stating that "[e]ven the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial'").

represented by counsel, the nature of Mr. Brignac's business in this suit is a threshold matter for the Court to resolve." *Id.*; *see also Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010) ("A corporation or other artificial entity must be represented by licensed counsel." (citing *Rowland v. California Men's Colony,* 506 U.S. 194, 201–02 (1993) for the proposition that "28 U.S.C. § 1654 does not allow corporations, partnerships, or associations to appear in federal court other than through a licensed attorney")); *see also Precision Pay Phones v. Qwest Commc'ns Corp.*, 210 F. Supp. 2d 1106, 1119 (N.D. Cal. 2002) (citing *National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.,* 748 F.2d 602, 609–10 (11th Cir. 1984) for the proposition that "pursuant to 28 U.S.C. § 1654, a sole proprietor c[an] appear in federal court pro se").

B. <u>Analysis</u>

    1. <u>Real Party in Interest</u>

The first question to resolve is which entity is the real party in interest in this case. Federal Rule of Civil Procedure 17 requires that an action "be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a); *see U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986). Various documents filed by Mr. Brignac have identified Jaron Brignac (as an individual), BPCS Law, and BPCS Law Evictions as the relevant party. *See, e.g.*, Original Complaint at 1; *id.* ¶ 5; SAC at 1. Yelp, on the other hand, insists that the relevant entity is BPCS Law. *See* Mot. at 15.

The essential question is which entity was party to the Advertising Agreement with Yelp and/or has the right to enforce that contract. As the Supreme Court has held: "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.' Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their *own* contractual relationship . . . ." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006) (emphasis added). Thus, Mr. Brignac will not have standing to bring this case if BPCS Law is the party that contracted with Yelp and if BPCS Law is a corporation as opposed to a sole proprietorship. *See* Dismissal Order at 9.

Yelp argues that BPCS Law is the real party in interest "because the contract that is being

7

allegedly impaired is between BPCS Law and Yelp, not Brignac and Yelp." Mot. at 15; *see also* Reply at 1, Docket No. 72 ("plaintiff Jaron Brignac brought this suit based on claimed injury to BPCS Law"). In support of that contention, Yelp has provided a copy of the Advertising Agreement that Mr. Brignac entered into with Yelp on October 5, 2017.[2] *See* MacBean Decl., Ex. 1 ("Ad. Agreement"). That Agreement states:

> To enroll BPCS Law in Yelp's Advertising Program, please reply to this email with 'I AGREE, Jaron Brignac' in the Subject line or body of the email. By responding to this email with the phrase 'I agree' you agree that you have read, accept, and agree to the Advertising Agreement on behalf of, and as an authorized representative of, the Client identified.

*Id.* at 1. Below that text, the Agreement lists the "Client Name and Address" as "BPCS Law" at "9107 Wilshire Blvd Ste 450, Beverly Hills, CA 90210." *Id.* at 1–2. Mr. Brignac responded to that email approximately ten minutes after it was first sent with the phrase, "I agree." *Id.* at 1.

While the text of the contractual agreement provides strong evidence that BPCS Law is the real party in interest, the Court considers three additional points. First, Mr. Brignac asserts that "[a]ll contracts that were created with Yelp were signed by me as an individual, not as a corporation." Brignac Declaration in Support of Opposition to Defendant's Motion to Dismiss ("Brignac Opp. Dec.") ¶¶ 8, 12, Docket No. 71-1. However, to the extent that Mr. Brignac argues that his signature on the Advertising Agreement (and other documents) makes him a party to the Agreement, *see, e.g.*, Brignac Opp. Dec. ¶¶ 8, 12, Yelp is correct in noting that "a corporation is a legal entity that, by definition, can only act through its agents." Reply at 6 (citing *Martinez v. Caribbean*, 764 F.3d 1062, 1068 (9th Cir. 2014)). Thus, the fact that Mr. Brignac provided his own signature on the Advertising Agreement does not undermine the claim that BPCS Law is the entity that is party to the contract. In fact, the Advertising Agreement specifically explained that

---

[2] Mr. Brignac alleges that the "contracts which Yelp presents as an attachment to Ian MacBean's declaration is [sic] not authentic." Brignac Declaration in Support of Motion to Treat Defendant's Motion to Dismiss as a Motion for Summary Judgment ("Brignac SJ Dec.") at 2, Docket No. 66-1. However, his objection is confined to "the terms and conditions as it [sic] relates to ad placement, cost per click, and performance programs" for "non-black business owners." *Id.* It does not appear that he objects to the authenticity of the document otherwise. Mr. Brignac does not present a different version of the contract as the authentic one.

BPCS Law was the Client and that Mr. Brignac was acting on its behalf. *Id.*

Second, Mr. Brignac also emphasizes the fact that he filed this suit in an individual capacity and suggests—through somewhat circular reasoning—that his filing of the suit is evidence that he has standing to bring the suit. *See* Brignac Opp. Dec. ¶¶ 10 ("I filed this current law suit against Yelp as an individual, not as BPCS LAW."); *see also* Opp. at 2 ("Plaintiff sued Yelp as an individual business owner, and listed Jaron Brignac as the Plaintiff."). However, the fact that Mr. Brignac has filed this suit is not evidence that he is the appropriate party to bring the § 1981 claim he seeks to bring. As Yelp notes in its Reply, *Domino's Pizza* indicates that where an individual attempts to bring a claim that should instead by brought by a corporation, that claim is properly dismissed for lack of standing. *See Domino's Pizza*, 546 U.S. at 477–80; Reply at 2, 6. Thus, Mr. Brignac's assertion that he brought the suit as an individual against Yelp is unavailing and not dispositive to the question at bar.

Third, Mr. Brignac notes that BPCS Law has sometimes done business as BPCS Law Evictions. *See, e.g.*, Original Complaint ¶¶ 7, 15, 21; FAC ¶¶ 7, 15, 26. As early as November 2018, Mr. Brignac stated that he had "*recently* started doing business online as BPCS LAW EVICTIONS" for the purpose of search engine optimization. *See* Original Complaint ¶ 7 (emphasis added). However, it does not appear that Mr. Brignac registered this name as a fictitious business name until February 1, 2019, well after the Yelp contract was signed. *See* Brignac Opp. Dec., Ex. C. In addition, Mr. Brignac indicated on that fictitious business name form that—as of February 2019—he had not yet started to transact business under the fictitious business name BPCS Law Evictions. *Id.* To the extent that Mr. Brignac now attempts to "argue that BPCS Law Evictions is a different entity than BPCS Law," he cannot do so without "improperly contradicting his prior allegations" that BPCS Law Evictions was simply an alias he was using for the purpose of maximizing search engine optimization. Mot. at 8. In addition, even if BPCS Law Evictions *was* a separate entity from BPCS Law, Mr. Brignac has stated that BPCS LAW Evictions was only founded in February of 2019. Brignac Opp. Dec. ¶ 11 (consistent with the date on the fictitious business name form he submitted, *see* Brignac Opp. Dec., Ex. C). Because the Advertising Agreement with Yelp was formed on October 5, 2017, it is not possible

that BPCS Law Evictions was the entity that was party to that contract; it simply did not exist at the time.

As a result of the foregoing analysis, the Court finds that BPCS Law is the real party in interest for this case. Mr. Brignac has failed to raise a disputed issue of fact to the contrary. The Court next considers what type of business BPCS Law is.

2. Type of Business

Since BPCS Law is the proper plaintiff to bring this § 1981 claim, whether the case can remain in court depends on what type of business BPCS Law is. If it is a corporation, the case must be dismissed because a corporation cannot appear pro se, and no lawyer is currently representing Plaintiff. If it is a sole proprietorship, Mr. Brignac would have standing to bring the claim because a sole proprietorship may proceed pro se. *See National Independent Theatre Exhibitors,* 748 F.2d at 609–10; *see also* Dismissal Order at 9. It should be noted that Mr. Brignac referred to BPCS Law as a corporation in his first two complaints. Original Complaint ¶ 6; FAC ¶¶ 5–6. However, the Court acknowledged that Mr. Brignac, as a pro se plaintiff, "may not have been aware of the technical differences between a corporation and a sole proprietorship," so it did not assign dispositive weight to Mr. Brignac's choice of words. Dismissal Order at 5. It is, however, some evidence.

Mr. Brignac now explicitly states that he "founded BPCS LAW as a sole proprietorship" and was acting as a sole proprietorship when he entered into contacts with Yelp. Brignac Opp. Dec. ¶ 4; *see also* Opp. at 2 ("BPCS Law was licensed as a sole proprietorship, not a corporation upon signing the purported contract with Yelp."); *id.* ("Plaintiff acted as an individual sole proprietorship, not as BPCS LAW corporation, upon engaging in any contracts with Yelp prior to BPCS LAW coming into existence."). In support of that contention, Mr. Brignac offers a fictitious business name statement filed on June 20, 2014. Brignac Opp. Dec., Ex. A, Docket No. 71-1. That document lists BPCS Law as the entity utilizing a fictitious business name, indicates that BPCS Law is conducted by an individual, and lists Jaron Brignac as the sole proprietor. *Id.* It also lists the address for the sole proprietorship as 11331 Ventura Blvd, Studio City, CA 91604. *Id.* In challenging Mr. Brignac's assertion, Yelp has offered Articles of Incorporation for BPCS

10

1  LAW (which were filed with the California Secretary of State on August 4, 2015), two of BPCS
2  Law's Corporate Statements of Information (filed in 2016 and 2019), and a copy of the California
3  Secretary of State's Business Search webpage showing the "Entity Detail" page for BPCS Law,
4  which lists the company's business type as "Domestic Stock." *See* RJN, Exs. A–D.

In responding to the documents submitted by Yelp, Mr. Brignac contends that there are actually two BPCS Law entities: one that is a corporation and one that is a sole proprietorship. In addition, Mr. Brignac argues that he was "act[ing] as an individual sole proprietorship, not as BPCS LAW corporation, upon engaging in any contracts with Yelp prior to BPCS LAW coming into existence." Opp. at 2.[3] Other than this statement, Mr. Brignac fails to provide any corroborative evidence that BPCS Law, the sole proprietorship, engaged in any business as such after BPCS Law Corporation was incorporated. Moreover, even if the entities were and remained separate entities prior to BPCS Law coming into existence in August 2015, the Advertisement Agreement with Yelp was formed in 2017, more than two years after BPCS Law was incorporated. In addition, the BPCS Law with which Yelp formed a contract was located—as specified in the contract—at 9107 Wilshire Blvd Ste 450, Beverly Hills, CA 90210. *See* MacBean Decl., Ex. 1 ("Ad. Agreement"). Based on the documents provided by Yelp and Mr. Brignac, that was the address for BPCS Law *corporation*. *See* RJN, Ex. B. The sole proprietorship had been located at 11331 Ventura Blvd, Studio City, CA 91604. Brignac Opp. Dec., Ex. A. Thus, the evidence demonstrates that the entity that entered into a contract with Yelp in 2017 was BPCS Law the corporation and there is no material evidence to the contrary.

The Court concludes that it was BPCS Law, the corporation, that entered into the Advertising Agreement with Yelp in 2017. The corporation BPCS Law had existed for two years at the time the contract with Yelp was signed, and the address included in the contract with Yelp

---

[3] Yelp fairly notes: "To use the same name for a sole proprietorship and a corporation without disclosing to counter-parties to commercial transactions whether the counter-party is dealing with an individual or corporation would be misleading, if not fraudulent. The purpose of the fictitious business name statute is 'to *protect* those dealing with individuals or partnerships doing business under fictitious names' (Cal. Bus. & Prof. Code § 17900 (emphasis added)), not to facilitate a shell game in which a litigant claims that the same business concern is both a sole proprietorship and a corporation." Reply at 3.

references the corporate address of BPCS Law, not that of the sole proprietorship. The only evidence that Mr. Brignac sought to bind BPCS Law the sole proprietorship rather than the corporation was the contracting party to the Yelp contract is Mr. Brignac's assertion to the Court. However, this assertion does not rise to more than "bald assertions" that are "insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

Therefore, the Court finds that it is BPCS Law, the corporation, which must bring the § 1981 claims that Mr. Brignac currently seeks to assert. Mr. Brignac as an individual lacks standing to bring this case. Moreover, BPCS Law is not represented by an attorney. The suit must therefore be dismissed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and dismisses Mr. Brignac's claim for lack of standing and failure to comply with Civil Local Rule 3-9(b). This is without prejudice for BPCS Law, the corporation, from filing suit provided it is represented by an attorney.

This order disposes of Docket No. 64.

**IT IS SO ORDERED**.

Dated: October 17, 2019

_____
EDWARD M. CHEN
United States District Judge

12